## Case No. 15,033a.

### UNITED STATES v. EIGHTEEN PIPES DISTILLED SPIRITS.

[20 Niles Reg. 346.]

### District Court, D. Massachusetts. 1821.

CUSTOMS DUTIES—COLLECTION LAWS—SEIZURE OF DISTILLED SPIRITS—EVIDENCE.

[1. Certain casks of distilled spirits were seized under the collection act of March 2, 1799, §§ 41, 43 (1 Stat. 659, 660), on the ground that they were unaccompanied by the certificates required by law. At the time of seizure the claimant stated to the officer that he had the certificates at his house, and would at once bring them to the customhouse, where the goods were taken. He never produced them at the customhouse, but some time afterwards presented them to the district judge, when making an application for delivery of the goods on giving bond. *Held,* that these facts were sufficient to sustain an averment that the casks were "found unaccompanied with the proper certificates," so as to justify the seizure, and raise a legal presumption of the liability of the goods to forfeiture, which could only be repelled by the production of satisfactory proof that the spirits contained in the casks at the time of seizure had been actually imported and the duties paid.]

[2. If a person having in his possession for sale a cask of distilled spirits which has once passed from the customhouse, accompanied by the marks and certificate required by law, change essentially the contents of the cask, without first obliterating such marks, and surrendering the certificate, this act must be regarded as fraudulent, and debars him from ever after resorting to the certificate as evidence of his rights.]

[This was an information of forfeiture against 18 pipes of distilled spirits, claimed by T. R. Rix, charging the violation of sections 41 and 43 of the act of congress of March 2, 1799, "regulating the collection of duties on imports and tonnage."]

George Blake, Dist. Atty., for the United States.

Jas. T. Austin and Daniel Webster, for claimant.

BY THE COURT. It appeared in evidence, first, that the casks of distilled spirits in question were of such description as were required by the act to be marked and accompanied with the usual certificates; and, secondly, that on the 29th day of April last, they were found by the seizing officer in the possession of a person unaccompanied by such certificates. It was shown, by the testimony of sundry witnesses that the casks in question were filled at the time of the seizure with a species of distilled spirits, and that each of them had been regularly marked at the customhouse in Boston in conformity with the requirements of law, as containing foreign gin of the first proof, imported in ship Packet, Turner, master; all the original marks and numbers remaining as at first, without any change or obliteration. It was furthermore proved that the claimant, being present at the seizure, was requested by the seizing officer to produce the certificates which were required to accompany the casks; that, in answer to this demand, the

claimant declared that he had the proper certificates, and that he would go to his house for them, and bring them down to the customhouse for the inspection of the collector. The seizing officer requested him to do so, assuring him, at the same time, that he would go immediately to the customhouse, in order to meet him there. The casks were accordingly removed by the seizing officer to the store commonly used by the collector as a place of deposit for merchandise under such circumstances, and thereupon the seizing officer went to the customhouse, according to the arrangement which had been previously made with the claimant, as above stated, in order to wait there his arrival with the certificates. It appeared, however, that the claimant did not, on that day, nor at any time afterwards, produce the said documents at the customhouse, as he had proposed to do, and in fact that nothing further was heard of any such documents, either by the collector or any other representing the United States in behalf of the prosecution, until they were produced before the district judge on the second day of June following, when an application was made to the said judge by the claimant for the delivery of the merchandise, upon giving bond for the appraised value thereof, in conformity with the provisions of the law in such cases.

It was further shewn on the part of the United States, very clearly and satisfactorily, that, notwithstanding the apparent conformity between the casks and certificates, yet that the contents of the former at the time of the seizure were essentially different from what they were at the time of their being marked, and at the issuing of the certificates; that the spirits now contained in the casks, instead of being genuine Holland gin of first proof, according to the purport of the marks and certificates, were in fact a species of mixed, adulterated spirit, composed (in the opinion of the witnesses) partly of foreign and partly of domestic manufacture; and, although not much reduced merely as to proof, yet so affected by the mixture as to have lost about fifty per cent. of the market value of the article as at the time of its original importation.

The opinion of the judge, upon the several points which had arisen at the trial, was expressed to the effect following, viz.:

1. That, even if the certificates now produced were genuine, and found, in every respect, to comport with the marks and contents of the casks, still that the circumstance of their nonproduction, upon the demand of the seizing officer, and their being kept back, for such a length of time by the claimant, must be deemed sufficient, in point of law, to maintain the "averment that the casks were found unaccompanied with the proper certificates," so as to justify the seizure, and to raise a legal presumption of

their liability to forfeiture, which could only be removed by the production of satisfactory proof on the other side "that the distilled spirits contained in them at the time of seizure, had actually been imported into the United States, and the duties thereupon paid or secured."

2. That a person having in his possession for sale a cask of distilled spirits, which has once passed from the customhouse, and is accompanied by the marks and certificates required by the law in that case, has no more right, without first obliterating such marks, and surrendering the certificate, to change, essentially, the contents of such a cask, than he has to alter the marks, or to erase and falsify the certificate itself; that to do this, in either case, is to tamper with an important public regulation; that it must be regarded as a fraudulent act of the party, and, like the forging or falsification of a deed, or any other instrument, must forever debar him from the privilege of resorting afterwards to the original voucher as affording the evidence of his rights.

3. As a conclusion from the foregoing positions, it was laid down distinctly by the judge that if, from the strong proofs which had been produced on the part of the prosecution, it should be the opinion of the jury that any part of the spirits contained in these casks were of foreign manufacture, or, in other words, were such as were required by law to be marked and certificated, and that the contents of the casks, at the time of the seizure, were essentially different from what they were when the certificates were issued, then that the certificates ought to be rejected as wholly inapplicable, as affording no evidence whatsoever that the spirits had been legally imported and the duties secured. In fine, that, whatever might be the inconvenience or injury resulting to the claimant from this construction, it was such, and such only, as had been brought upon him by his own indiscretion or fraud, in attempting to pervert the purposes of an important public document; and that he had therefore no reasonable grounds for complaining of any hardship.